UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOGESH BALWAN, <br><br>                    Petitioner, <br><br> v. <br><br> PAM BONDI et al., <br><br>                    Respondents. | CASE NO. 2:26-cv-00248-LK <br><br> ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Yogesh Balwan's Petition for Writ of Habeas Corpus. Dkt. No. 4. For the reasons described below, the Court grants the petition in part and denies it in part.[1]

### I. BACKGROUND

Balwan is a twenty-year-old "native and citizen of India." Dkt. No. 9 at 2; Dkt. No. 10-7 at 2. On or about October 2, 2023, he entered the United States near Otay Mesa, California, and was detained "shortly after he unlawfully entered the United States without inspection or parole."

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

Dkt. No. 8 at 1; *see also* Dkt. No. 10-3 at 2. Border Patrol issued a warrant for his arrest on October 3, 2023, which stated that he was "being taken into custody as authorized by section 236 of the Immigration and Nationality Act ("INA") [(8 U.S.C. § 1226)]." Dkt. No. 10-1 at 2. On the same day, he was issued a Notice to Appear charging him as inadmissible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen "present in the United States without being admitted or paroled[.]" Dkt. No. 10-3 at 2.[2] The next day, a Border Patrol Agent released Balwan on an Order of Release on Recognizance ("OREC") pursuant to "section 236 of the Immigration and Nationality Act [(8 U.S.C. § 1226)] . . . pending a final administrative determination in [his] case[.]" Dkt. No. 10-4 at 2; *see also* Dkt. No. 10-7 at 3. He was instructed to report to "the nearest ICE [(Immigration and Customs Enforcement)]/ERO [(Enforcement and Removal Operations)] office to [his] intended destination." Dkt. No. 10-2 at 4. According to Balwan, he has a claim for asylum, withholding of removal, and protection under the Convention Against Torture that has been pending since December 11, 2023. Dkt. No. 4 at 6.

On January 10, 2024, ERO San Francisco enrolled Balwan in the "Alternatives to Detention Program (ATD)," Dkt. No. 10-7 at 4, and permitted him to relocate to Portland, Oregon, Dkt. No. 9 at 2. On January 23, 2024, he was granted another OREC by the Portland ERO office, *id.*, which states that it was granted "[i]n accordance with section 236 of the Immigration and Nationality Act [(8 U.S.C. § 1226)]," Dkt. No. 9-1 at 2. Balwan signed the OREC, acknowledging the conditions of his release. *Id.*

According to DHS records, "[o]n March 18, 2025, [Balwan] failed a Home Visit with the Intensive Supervision and Appearance Program (ISAP), which resulted in ISAP generating an Emergency Report." Dkt. No. 10-7 at 4. An ICE deportation officer also avers in her declaration

---

[2] On the Form I-862, DHS selected the checkbox indicating that Balwan is "an alien present in the United States who has not been admitted or paroled" and not the checkbox designating him "an arriving alien." *Id.*

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

that Balwan failed to complete a scheduled biometric check-in on March 6, 2025, Dkt. No. 9 at 3, but this statement is not corroborated in the immigration record submitted by DHS. DHS records document no further action until an immigration officer issued an arrest warrant for Balwan on December 24, 2025 on the basis that he is removable from the United States. Dkt. No. 10-6 at 2. On December 25, 2025, ERO Seattle arrested Balwan "during an at large enforcement action an[d] transferred him to the Northwest ICE Processing Center (NWIPC), Tacoma, WA for further action on his case." Dkt. No. 10-7 at 4.[3] An ICE official canceled Balwan's OREC on that date because he "failed to comply with the conditions of release." Dkt. No. 9-1 at 2.

Also on December 25, 2025, a detention officer determined that, "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations," Balwan would be detained pending a final administrative determination in his case. Dkt. No. 10-8 at 2. Balwan acknowledged receipt of this custody determination and requested review of the determination by an immigration judge. *Id.*[4]

Separately, Balwan avers that on November 18, 2025, the Sacramento County Superior Court in California "ordered Special Immigrant Juvenile Findings for [him]." Dkt. No. 4 at 4.

---

[3] During the enforcement action, ERO officers knocked on the door of Balwan's "last known address" in Portland, Oregon, and "[a]n adult male matching [the] target answered the door." *Id.* at 3. ERO officers "introduced themselves as officers with Immigration and Customs Enforcement," and Balwan answered and confirmed his identity. *Id.* Officers then asked Balwan to step outside, and he complied, at which point officers verified his identity and placed him under arrest for "immigration violations." *Id.*

[4] Although the record does not indicate whether an immigration judge has reviewed the detention officer's December 2025 custody determination, *see* Dkt. No. 10-8 at 2, Balwan's attempt to seek release by administrative means was likely futile because of a then-controlling decision by the BIA that detention is mandatory under 8 U.S.C. § 1225(b) for noncitizens in Balwan's posture. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). Thus, exhaustion of administrative remedies is not required. *Mejia Lopez v. Noem*, No. 2:26-CV-00228-TMC, 2026 WL 323057, at *3 (W.D. Wash. Feb. 6, 2026) ("[E]xhaustion is not necessary here in light of Respondents' and the BIA's consistent position that detainees in his position are subject to mandatory detention under § 1225(b)(2)."); *Cotoc Yac De Yac v. Hermosillo*, No. 2:25-CV-02593-DGE-TLF, 2026 WL 124334, at *4 (W.D. Wash. Jan. 16, 2026) ("[B]ecause the BIA has recently held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, requiring Petitioner to first pursue administrative relief, i.e., request a bond hearing before an immigration judge, would be futile."); *cf. Ngugi v. Lyons*, No. 1:25-CV-01783-KES-EPG, 2026 WL 35610, at *2 (E.D. Cal. Jan. 6, 2026) (denying petitioner's request to waive exhaustion requirements where "Respondents acknowledge[d] that petitioner [was] being detained under 8 U.S.C. § 1226(a)" and "concede[d] that [he was] entitled to request a bond or custody redetermination hearing pursuant to 8 U.S.C. § 1226" (citation modified)).

These findings include that "under California state law, [Balwan's] biological parents and other immediate relatives have abandoned [him]" and, therefore, "it is not in his best interest to send [him] back to India." Dkt. No. 4-3 at 8. Prior to Balwan's December 25, 2025 detention, his removal case was being adjudicated at the Concord Immigration Court in Concord, California. Dkt. No. 4 at 2. After his re-detention, his case was moved to the Tacoma Immigration Court, while his "attorney is in Sacramento, California." *Id.*

On January 22, 2026, Balwan—purportedly proceeding pro se—filed a petition for a writ of habeas corpus. Dkt. No. 1.[5] Respondents[6] filed a return on February 5, 2026, Dkt. No. 8, and Balwan filed a traverse on February 10, 2026, Dkt. No. 12.

## II.  DISCUSSION

In his habeas petition, Balwan asserts that Respondents (1) violated the Administrative Procedure Act and 8 U.S.C. § 1226(a) by erroneously applying 8 U.S.C. 1225(b)(2) to him; and (2) violated his Fifth Amendment Due Process rights by detaining him despite the fact that "[n]either community protection nor flight risk applies to [him.]" Dkt. No. 4 at 18–20. He seeks (1) release, or in the alternative, an individualized bond hearing "at which the government bears the burden to justify detention by clear and convincing evidence"; (2) a declaration that his

---

[5] The Court believes that Balwan's filings may have been drafted by an unnamed attorney. This raises numerous concerns, including that (1) an effectively false pro se status requires the Court to give unwarranted "liberal treatment" to the litigant's briefs, *Duran v. Carris*, 238 F.3d 1268, 1272 (10th Cir. 2001); and (2) drafting filings for a pro se party when not licensed in Washington may "constitute[] the unauthorized practice of law, which is criminal in Washington," *Landon v. Ply-Gem Windows*, No. C23-1747JLR, 2024 WL 3069479, at *2 (W.D. Wash. June 20, 2024); *see also* Wash. Rev. Code § 2.48.180(3). Any filings from Balwan in the future must indicate whether he has received assistance from an attorney in any way, directly or indirectly, and if so, from whom. Any such attorney will be subject to the rules of this Court.

[6] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

detention without such an individualized determination violates the Fifth Amendment Due Process Clause; (3) a declaration that his continued detention violates the Fifth Amendment Due Process Clause; (4) an order "prohibiting the Respondents from transferring [him] from the district without the Court's approval"; and—inappropriately—(5) attorney's fees and costs.[7]

A.  **Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-*

---

[7] This underscores the Court's suspicion that an attorney ghost wrote the petition for Balwan.

*Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

B.   **Balwan Has Established a Due Process Violation**

While Balwan appears to argue otherwise, *see* Dkt. No. 4 at 7–14, the Ninth Circuit has rejected the proposition that due process demands the same procedures no matter which detention statute applies to a non-citizen. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

    1.   Process Required by Statute

        *(a) 8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Respondents aver that Balwan is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) "because he was present in the United States without being admitted or paroled and is an applicant for admission." Dkt. No. 8 at 5 (citing *Matter of Yajure-Hurtado*, 29 I&N Dec. 216, 220 (B.I.A. 2025)). Balwan disagrees, arguing that Respondents' position is "contrary to the plain text of the statute" and that he is instead subject to 8 U.S.C. § 1226(a) because (1) he "was not

intercepted at a port of entry" but rather "was apprehended inland" and "issued a Notice to Appear for full removal proceedings under 8 U.S.C. § 1229a"; and (2) he was released on an OREC rather than on temporary parole under 1225(b). Dkt. No. 12 at 1, 3.

8 U.S.C. § 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

Respondents acknowledge that courts in this District have rejected their argument that noncitizens in Balwan's position are detained pursuant to Section 1225(b), and they improperly attempt to incorporate by reference their arguments in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025). Dkt. No. 8 at 6. This Court agrees with the reasoning of *Rodriguez Vazquez* and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." 802 F. Supp. 3d at 1322–23. "[I]f the Court were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1324–25. Furthermore, had Congress had wanted Section 1225(b) to

have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)).

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). The government has treated Balwan as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until his December 25, 2025 detention. Specifically, after Balwan entered the United States in October 2023, he was released on an OREC pursuant to "section 236 of the Immigration and Nationality Act," Dkt. No. 10-4 at 2, which is codified at 8 U.S.C. § 1226, *see Diouf v. Mukasey*, 542 F.3d 1222, 1227 (9th Cir. 2008). On January 23, 2024, he was again granted an OREC, this time by the Portland ERO office, in a document that was issued "[i]n accordance with section 236 of the Immigration and Nationality Act [(8 U.S.C. § 1226)]," Dkt. No. 9-1 at 2.

As discussed above, unlike noncitizens detained under 8 U.S.C. § 1226(a), noncitizens detained under 8 U.S.C. § 1225(b) are subject to mandatory detention unless they are temporarily paroled into the United States "for urgent humanitarian reasons or significant public benefit[.]" *Jennings*, 583 U.S. at 283 (quoting 8 U.S.C. § 1182(d)(5)(A)). Nothing in the record suggests that Balwan's release was pursuant to Section 1225(b). Indeed, as discussed above, he was twice released on his own recognizance pursuant to section 1226. These facts demonstrate that his detention is governed by 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

*(b) Procedures Required under 8 U.S.C. § 1226(a)*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

As Respondents acknowledge, Dkt. No. 8 at 6, "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter*

*of E-Y-F-G*, 29 I&N Dec. 103, 104 (2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)).

*(c) Balwan has Established that Respondents Violated 8 U.S.C. § 1226(a)*

Balwan contends that Respondents' application of Section 1225(b)(2) to him violates the Immigration and Nationality Act because he is properly detained under 1226(a). Dkt. No. 4 at 18. He alleges that "the Government has wholly deprived [him] of notice and the chance to rebut its case for continued detention." *Id.* at 14; *see also* Dkt. No. 12 at 2 ("Respondents did not provide any opportunity to demonstrate that [Balwan is] not a flight risk or danger to the community."). Respondents admit that it is their position that Balwan "is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)," meaning that Section 1225(b)(2) would mandate detention in any administrative custody determination. Dkt. No. 8 at 5–6. As explained above, Respondents' position is incorrect and has deprived Balwan of the process due to him under Section 1226(a) and its related regulations.[8]

---

[8] Balwan also requests that the Court declare that Respondents' conduct violates the APA as arbitrary, capricious, and not in accordance with law. Dkt. No. 4 at 20. He characterizes Respondents' "relevant conduct" as "[t]he application of § 1225(b)(2) to [Balwan]." *Id.* at 18. Respondents do not respond to this claim. *See generally* Dkt. No. 8. In any event, the relief Balwan seeks under the APA claim is the same as what he seeks under the INA claim—a determination

2. <u>Due Process Requirements</u>

In addition to his statutory claim, Balwan claims that his re-detention was without "adequate procedural protections" in violation of the Fifth Amendment. Dkt. No. 4 at 8–14, 19. He argues that his procedural due process rights were violated when Respondents "revok[ed] [his] OREC and re-detain[ed] [him] without notice or a meaningful opportunity to be heard." Dkt. No. 12 at 4. He seeks release on this basis. Dkt. No. 4 at 19–20.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

*(a) Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law."

---

that he may not be detained under 8 U.S.C. § 1225(b). *See* Dkt. No. 4 at 18–20. Because the Court finds that Balwan's detention under 8 U.S.C. § 1225(b) violates the INA, it need not reach the APA question. *See, e.g.*, *J.S. v. Wofford*, No. 1:25-CV-02016 DC SCR (HC), 2026 WL 297304, at *1 (E.D. Cal. Feb. 4, 2026) ("Because the court is granting the petition on the INA claim, the court need not address any additional grounds raised in the petition.").

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Balwan in 2023, DHS released him on his own recognizance "pending a final administrative determination in [his] case[.]" Dkt. No. 10-4 at 2. It issued another OREC in January 2024. Dkt. No. 10-9. Balwan has spent the vast majority of his years in the United States released on these ORECs. Balwan has established sufficient ties here that an individual volunteered to support him and serve as his guardian after his parents stopped supporting him. Dkt. No. 4-3 at 10–11. He is entitled to due process under the Fifth Amendment with respect to his protected liberty interest in remaining out of immigration custody.

*(b) Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Balwan has a weighty private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* This factor favors Balwan.

Turning to the second factor, Balwan argues that the government's "blanket detention policy under *Yajure Hurtado* creates an extreme risk of erroneous deprivation by denying [him] any opportunity to demonstrate eligibility for release[.]" Dkt. No. 4 at 11. Indeed, because Respondents purported to detain Balwan under 8 U.S.C. § 1225(b), he effectively had no opportunity to demonstrate why he should be released on bond. *See* Dkt. No. 8 at 5–6 ("Section 1225(b) requires mandatory detention[.]"). Again, the government's stated view is that noncitizens previously subject to discretionary detention under 1226(a) are now subject to mandatory detention with no right to a hearing under section 1225(b)(2), and Respondents have asserted that immigration judges are bound under *Yajure Hurtado* to deny any bond hearing to noncitizens following their detention. This erroneous position undergirds any decision to detain a noncitizen like Balwan who was previously subject to 1226(a). "The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

warranted, nor any process for Petitioners to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *24 (D. Nev. Nov. 17, 2025). Furthermore, the nine-month delay between Balwan's alleged violations of his OREC conditions and his arrest raise concerns that the arrest was not in fact motivated by his alleged violations. And even if the delay was due to lack of resources or bureaucratic disconnect on the part of the government, the Court finds that "the challenges facing under-resourced and disjointed agencies underscore rather than undermine the need for robust procedural safeguards[.]" *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

The additional procedures afforded under Section 1226(a), including an individualized custody redetermination by an immigration judge, would substantially mitigate the risk of erroneous deprivation of Balwan's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Balwan could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). This factor weighs in favor of Balwan.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests

of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. "These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado*, 2025 WL 3205356, at *25. Considering the lapse of time between Balwan's alleged violations and DHS's planned arrest, along with his lack of criminal history, *see* Dkt. No. 10-7 at 4, the Court can identify no reason that an individualized hearing would interfere with the government's interests. Therefore, the Court finds that this factor too weighs in favor of Balwan.

**C.     Remedy**

The specific harm faced by Balwan is his detention for months without a bond hearing pursuant to Section 1226(a). "The Court finds that harm is remedied by ordering a bond hearing within seven days," and "[g]iven the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner[] shall be immediately released" on the terms of his most recent OREC. *Escobar Salgado*, 2025 WL 3205356, at *26; *see also Martinez Flores v. Kaiser*, No. 1:26-CV-00582-KES-CDB (HC), 2026 WL 482739, at *9 (E.D. Cal. Feb. 20, 2026) (ordering same); *Solano Gallardo v. Warden*, No. 5:26-CV-00485-SSS-BFM, 2026 WL 483207, at *1 (C.D. Cal. Feb. 20, 2026) (ordering same); *Araiza v. Hermosillo*, No. 2:25-CV-02139-TL, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (ordering same).

Balwan contends that he was "entitled to a bond hearing before an Immigration Judge where the government was required to prove under *clear and convincing standard* that [his] detention was necessary." Dkt. No. 12 at 4. But Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The implementing regulations likewise do not identify who shoulders what burden, simply stating that both parties may present evidence. *See* 8 C.F.R. § 1003.19(d) (2025) ("The determination of the Immigration Judge as to custody

status or bond may be based upon any information . . . that is presented to him or her by the [noncitizen] or the Service."). The Supreme Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

The federal appellate courts that have the addressed this question are split. The First and Second Circuits have held that the burden of proof for continued immigration detention must be placed on the government—but those Circuits do not agree on the standard of proof. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (applying the Supreme Court's *Mathews v. Eldridge* test before holding that with respect to a petitioner who had been in custody for ten months, the government bore the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020) (applying the *Mathews* test before holding that, after a showing of prolonged detention, the government bore the burden of proving danger and flight risk by clear and convincing evidence).

The Third and Fourth Circuits have assigned the detainee the burden of proof on the questions of flight risk and danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (holding that requiring a Section 1226(a) detainee to show that he or she is not a danger or the community or a flight risk by a preponderance of the evidence does not violate the Due Process Clause); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277, 279 (3d Cir. 2018) (no due process violation with respect to burden remaining with detainee to show that he is not a danger to the community or a flight risk).

The Ninth Circuit has declined to require the government to meet a clear and convincing burden of proof to justify continued detention of a noncitizen in the specific context of a second

bond hearing under Section 1226(a). *Compare Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that "[g]iven the substantial liberty interest at stake" for noncitizens subject to prolonged detention under Section 1226(a), "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond"); *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (in a case involving a petitioner detained under Section 1226(c), describing *Singh* as "offer[ing] the high-water mark of procedural protections required by due process"); *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (noting that "after the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and concluding that the Due Process Clause did not entitle the petitioner "to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence").

The Court need not address whether as a general matter, a noncitizen detained under Section 1226(a) is entitled to a hearing at which the government is required to prove by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk, because it determines that under the particular and unique circumstances here, *Mathews* requires such a hearing. Specifically, the government has twice released Balwan on an OREC, permitting him to live with relative freedom in this country for over two years, and it waited approximately nine months after relatively innocuous alleged violations of Balwan's OREC to arrest him on the heels of DHS's unprecedented reversal of its views on the basis for detaining citizens like Balwan. "Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'"—as described in the above analysis—"is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." *Singh*, 638 F.3d at 1203–04 (quoting *Addington v. Texas,* 441 U.S. 418, 427 (1979)).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 17

And the significant risk of an erroneous deprivation of Balwan's liberty interest—also described in the analysis above—is reduced with the "procedural safeguard" of shifting the burden of proof to the government to prove that he is a danger to the community or flight risk. *Mathews*, 424 U.S. at 335.

### III.  CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 4, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents must provide Balwan with a bond hearing under Section 1226(a) before an immigration judge within seven days of the date of this Order. At the hearing, the government bears the burden of proving by clear and convincing evidence that Balwan is a danger to the community or a flight risk. Respondents must ensure that the hearing is recorded. Respondents are enjoined from denying bond to Balwan on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2). The Court further notes that because *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025) has been vacated as contrary to law under the Administrative Procedure Act, *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284, at *10 (C.D. Cal. Feb. 18, 2026), it cannot be invoked by the immigration judge to decline jurisdiction.

2. If a bond hearing is not provided within seven days of the date of this Order, Balwan shall be released from ICE custody immediately on the terms of his most recent OREC or other terms consistent with Section 1226(a). Respondents must file a Status Report with the Court either confirming that Balwan received a bond hearing—and the results of that hearing—or otherwise confirming his release by March 4, 2026.

3.  If the immigration judge does not order Balwan released, Respondents are prohibited from transferring Balwan from this jurisdiction—i.e., the Western District of Washington—for seven days following the immigration judge's decision, unless such transfer is necessary for medical evaluation, medical treatment, release, or extenuating circumstances.

Dated this 23rd day of February, 2026.

*Lauren King*

Lauren King
United States District Judge